**William P. SANDIDGE, Jr., et al.,**
**Appellants,**

**v.**

**The KENTUCKY TRUST COMPANY,**
**Trustee, etc., et al., Appellees.**

Court of Appeals of Kentucky.

April 29, 1966.

Charles I. Dawson, Louisville, Thomas E. Sandidge, Owensboro, for appellants.

Wyatt, Grafton & Sloss, Stuart E. Lampe, Louisville, Morton Holbrook, Sandidge, Holbrook, Craig & Hager, Owensboro, James W. Stites, Stites, Peabody & Helm, Louisville, for appellees.

CULLEN, Commissioner.

The two sons of W. P. Sandidge, Sr., deceased, by his first wife appeal from a judgment making a construction of his will as to how, following the termination of a life estate given to the testator's second wife, his estate should be divided between the appellants and testator's two sons by his second wife.

W. P. Sandidge, Sr., died in 1935, leaving surviving him his second wife, his two sons by his first wife, and his two sons by his second wife, all adults. His will directed that his estate be divided into eighths; that his sons Thomas and William (by his first wife) be paid immediately one-eighth each; that the remaining six-eighths be held in trust and the income be paid to his widow during her life; and then, that

> "At the time of the death of my wife, my said trustee will distribute a sufficient sum out of the estate then in his hands as such trustee to Ridley M. Sandidge and Christopher C. Sandidge, *to make them equal* with my sons T. E. Sandidge and William P. Sandidge, Jr. After this has been done, the remainder of my estate then in the hands of my said trustee shall be divided equally between my four sons, T. E. Sandidge, William P. Sandidge, Jr., Ridley M. Sandidge, and Christopher Sandidge." (Our emphasis.)

The testator's net estate at time of distribution in 1936 was valued at $92,188.08. Thomas and William each were paid one-eighth of this, or $11,525.51. The balance was held in trust until the death of the widow in 1963.

The controversy arises from the fact that simply by reason of the spiralling prosperity in this nation during the period the property was held in trust, the property so increased in value that at the time of the widow's death it was worth $223,292.18. The appellants, Thomas and William, took the position that to comply with the direction of the will that Ridley and Christopher be made equal, they should be paid only the same *number of dollars* that Thomas and William were paid in 1936, i. e., $11,525.51 each. Ridley and Christopher's administrator (he having died in 1957) maintained that at the very least they were entitled to the benefit of the economic growth during the period between the time Thomas and William received their one-eighth shares and the time Ridley and Christopher were to receive "a sufficient sum * * * to make them equal." The circuit court accepted the latter view and applied it by adjudging that the estate remaining at the widow's death be divided into sixths; that Ridley and Christopher's administrator each be paid a one-sixth share (worth $37,-215.53), and the remaining four-sixths then be divided equally among Thomas, William, Ridley and Christopher's administrator.

We have no difficulty in concluding that the judgment is correct. We think it is quite clear that the testator intended his four sons to fare equally with but one exception—Ridley and Christopher were to be deprived of the *use* of all of their shares during their mother's lifetime, whereas Thomas and William were to be deprived of the use of only half of their shares. By this plan the *income* that Ridley and Christopher otherwise would have received went to their mother. This was of direct benefit to their mother. But to deprive Ridley and Christopher, after the termina-

tion of the life estate, of an enhancement in value of the corpus of the estate which occurred during the life estate would not benefit the mother; it would benefit only Thomas and William. In other words, the construction contended for by Thomas and William would create an inequality for which the testator could have had no reason, whereas under the construction given by the circuit court the only inequality—loss of *income*—reasonably was intended to benefit the widow.

We think the situation should be considered the same as if the testator had created *two* trust funds for his widow; one consisting of half of his estate and the other consisting of Ridley's and Christopher's postponed one-eighth shares. In that situation it would be obvious that Ridley and Christopher would receive the ultimate benefit of any economic growth.

The appellants argue that had the testator meant for Ridley and Christopher to receive equalizing shares of one-sixth of the remainder estate at the termination of the life estate he would have said so by specific reference to such fractions. On the other hand the appellees contend that had the testator meant for Ridley and Christopher to receive only the same number of dollars that Thomas and William were paid, he would have directed that the former be paid the same amount rather than directing that they be paid "a sufficient sum \* \* \* to make them equal." This is a fruitless argument.

The appellants also maintain that the law of advancements should be applied, under which the advancement is "estimated according to the value of the property when given." KRS 391.140. The advancement statute does not apply here, because there is no *undevised* estate. And we find no sufficient reason to apply the *principle* of the statute because it is merely an expression of the legislative view of what is fair in an advancement situation—not a rule for effectuating a testamentary intention to achieve equality among children. Actually, the statute ordinarily applies in cases where the deceased intended *not* to treat his children equally.

The construction placed upon the will by the circuit court achieves practical equality, which we believe the testator intended.

The judgment is affirmed.

PALMORE, J., not sitting.